MERRICK, Appellant, vs. NORTHWESTERN NATIONAL LIFE' INSURANCE COMPANY, Respondent.

*December 15, 1904—February 21, 1905.*

*Life insurance: Wrongfully declared forfeiture: Right of action of. wife as beneficiary: Joinder of parties: Measure of damages.*

1. Where, under sec. 2347, Stats. 1898, and the terms of the policy, insurance on a husband's life was to go to his wife as her separate property if she survived him, otherwise to his heirs,. neither the husband nor his heirs are necessary parties to an action by the wife against the insurance company for damages, based on the wrongful act of the company in declaring the policy forfeited.

2. The wife has a cause of action in such a case against the insurance company, although the husband is still living; and the measure of her damages is the value of the policy at the time it was so declared forfeited.

APPEAL from a judgment of the circuit court for Dane· county: E. RAY STEVENS, Circuit Judge. *Reversed.*

This is an appeal from an order sustaining a demurrer to a complaint alleging, in effect, that the Madison Company therein mentioned [the Northwestern National Life Insurance Company of Madison, Dane County, Wisconsin] was· incorporated under the laws of this state in 1882; that February 22, 1883, the plaintiff's husband, Noel N. Merrick,. became a member of that company and procured from that.

company insurance on his life for $4,000, which was sub-
sequently reduced to $1,000, payable as hereinafter men-
tioned; that the Madison Company was reincorporated in
January, 1892, under the laws of this state then in force;
that the Madison Company was again reorganized and re-
incorporated in 1899 under the laws of this state then in
force; that October 7, 1899, the Madison Company changed
its name so as to be the same as the defendant's name; that
after the defendant was duly incorporated under the laws of
Minnesota, and after it was duly licensed and authorized to
do business in this state, and after it was fully and duly em-
powered and authorized to consolidate with and reinsure the
risks and the members of the Madison Company, it did so
consolidate and reinsure the risks and members of the Madi-
son Company under the laws of this state then in force, and
the Madison Company, on August 29, 1901, transferred all
its members and risks and all its insurance contracts and obli-
gations and duties, including its duties and obligations to the
plaintiff and her husband, and all its duties and obligations
to its members, including the plaintiff and her husband, to
the defendant company, and at the same time and place the
defendant assumed and reinsured all the risks and members
of the Madison Company, including the membership and risk
and certificate of membership of the plaintiff's husband, and
at the same time and place the Madison Company assigned,
transferred, and set over and delivered to the defendant all
of its property of every nature and kind, and the defendant
accepted and carried the same away, and the Madison Com-
pany thereupon went out of business; that from and after
August 29, 1901, the defendant undertook to and did carry
out and perform the duties and obligations due to the plaint-
iff and her husband according to the terms and conditions of
his certificate of membership; that in 1898 the Madison Com-
pany issued and delivered to the plaintiff's husband a new
certificate of membership and contract of insurance, dated

January 4, 1898, in and by the terms of which the plaintiff's husband was obliged to pay, within thirty days after due notice by mail at his postoffice address at Meadow Valley, Wisconsin, $1.30 on the maturity of the certificate of any other member of the Madison Company; that said certificate also contained the following: That the Madison Company, upon due proof of the death of Noel N. Merrick, within sixty days after due proof and allowance thereof and of the plaintiff's claim or right, would pay to the plaintiff, if living, but in case of her death would pay *his heirs,* the amount of eighty per cent. of an assessment levied upon and collected from all the members of the Madison Company, not to exceed $1,000.

The complaint also alleges, in effect, that the plaintiff is the wife of Noel N. Merrick, and sole beneficiary named in the certificate, and, if living at the time of his death, she alone will have and receive the benefit, not exceeding $1,000; that she is the owner and holder and possessor of the certificate, and the annual assessments do not exceed $150; that an assessment levied upon and collected from all the present members of the Madison Company would far exceed the $1,000; that Noel N. Merrick has paid all assessments ever noticed to or required of him by either of the respective companies mentioned, and has kept and performed all the conditions and agreements contained in his contract; that June 3, 1902, he paid $3.55, which would have become due June 10, 1902, on assessment No. 104; that July 29, 1902, he remitted to the defendant $3.55, which would have become due August 10, 1902, on assessment No. 105, but which the defendant refused to accept, and declared that Noel N. Merrick had lapsed and forfeited his certificate and membership; that Noel N. Merrick protested, and insisted that he was still a member in good standing, but the defendant persisted that he was a lapsed and forfeited member by reason of the non-payment of assessment No. 104, mentioned, and that his only right was an application for reinstatement after he should

submit to a medical examination showing that he was insurable; that he was then in poor health, suffering from rheumatism and from disease of the heart, and was not insurable, and could not pass such examination successfully—of all of which he informed the defendant; that he is sixty-six years of age, and by the American Experience Tables his life expectancy is ten years; that in case of his death the members of the Madison Company would be liable thereon to an amount exceeding $3,000; that by the wrongful acts of the defendant aforesaid the plaintiff had been injured and damaged in the sum of $1,000, for which amount she demands judgment.

*Frank E. Parkinson*, for the appellant, argued, among other things, that whenever an insurance company wrongfully refuses to accept payments and to carry out the contract of insurance—wrongfully puts an end to it,—the real party in interest may sue at once and recover full damages. 1 Phillips, Ins. § 505; *U. S. v. Behan*, 110 U. S. 338; *Lovell v. St. Louis Mut. L. Ins. Co.* 111 U. S. 264; *People v. Security L. Ins. & A. Co.* 78 N. Y. 114, 125; *Martine v. International L. Ins. Soc.* 53 N. Y. 339; *Thompson v. New York L. Ins. Co.* 21 Oreg. 466; *New York L. Ins. Co. v. Statham*, 93 U. S. 30; *Hedden v. Griffin*, 136 Mass. 229; *Clemmitt v. New York L. Ins. Co.* 76 Va. 355; *Union Cent. L. Ins. Co. v. Poettker*, 5 Big. L. & A. Ins. Rep. 449; May, Ins. § 568; Bliss, Life Ins. § 425; Kerr, Ins. 751, 753. Putting an end to any contract gives an immediate right of action for full damages. Plaintiff need not wait for expiration of contract or death. *Hildebrand v. Am. F. A. Co.* 109 Wis. 171; *Howard v. Daly*, 61 N. Y. 362; *Burtis v. Thompson*, 42 N. Y. 246; *Van Werden v. Equitable L. A. Soc.* 99 Iowa, 621; *Dugan v. Anderson*, 36 Md. 567; *Cohen v. New York Mut. L. Ins. Co.* 50 N. Y. 610; *Hochster v. De La Tour*, 2 El. & Bl. 678, 20 Eng. L. & Eq. 157; *Day v. Conn. Gen. L. Ins. Co.* 45 Conn. 480.

For the respondent there was a brief by *Burr W. Jones,* attorney, and *Brown & Kerr,* of counsel, and oral argument by *Mr. Jones.*

CASSODAY, C. J.   1. It is claimed that the demurrer was properly sustained on the ground of defect of parties plaintiff. It appears from the complaint that the plaintiff's husband, who procured the insurance on his own life, is still living, and hence it is claimed that he should have been made a party plaintiff.   The contract required the defendant to pay the insurance to the plaintiff in case she should be living at the time of his death.   It is alleged that he is in poor health, but, of course, it is possible for him to survive his wife.   Her rights in the insurance are to be determined by the contract and sec. 2347, Stats. 1898.   Under that section and the contract the plaintiff was to have the whole of such insurance or none of it.   If she died before her husband, then the whole of the insurance was to go to "his heirs;" and if she survived her husband, then the whole of it was to go to her.   Subject to such contingency, the insurance was the sole and separate property of the plaintiff, free from the control or disposition of her husband.   *Canterbury v. N. W. Mut. L. Ins. Co., ante,* p. 169, 102 N. W. 593.   If, therefore, the plaintiff has a cause of action, then neither her husband nor his heirs have any interest in such cause of action, and hence are not necessary parties to this action.   The husband and wife are not so united in interest as to require that they should be joined as plaintiffs in this action.   Sec. 2604, Stats. 1898; *Barnes v. Beloit,* 19 Wis. 93; *Linden L. Co. v. Milwaukee E. R. & L. Co.* 107 Wis. 508, 83 N. W. 851.

2. It is claimed that the demurrer was properly sustained because the plaintiff's husband is still living, and hence that the plaintiff's alleged cause of action had not yet accrued.   It is well established that:

"When one party to an executory contract prevents the performance of it, or puts it out of his own power to perform it, the other party may regard it as terminated, and demand whatever damages he has sustained thereby." *Lovell v. St. Louis M. L. Ins. Co.* 111 U. S. 264, 4 Sup. Ct. 390; *Kelley, M. & Co. v. La Crosse C. Co.* 120 Wis. 84, 89, 90, 97 N. W. 674.

The principal controversies have been as to the proper form of action and the measure of damages. In the case at bar the demurrer concedes that the defendant had wrongfully refused to accept further payments of assessments, and had declared that the insurance had lapsed and the certificate of membership become forfeited. It is claimed that, if this is true, still it only gave to the plaintiff a right of action on the policy after the death of her husband. But there are adjudications to the effect that the policy-holder is not limited to such a remedy. Thus it has been held in Connecticut that, where

"a life insurance company refused to receive the premium on one of its policies from a holder on the ground that it had become forfeited by a breach of one of its conditions by the person whose life was insured, . . . there were three courses open to the holder of the policy in the circumstances: (1) He might elect to consider the policy at an end, in which case he could, in a proper action, recover its just value. (2) He might institute an equitable proceeding to have the policy adjudged in force, in which case the question of forfeiture could be determined. (3) He might tender the premium, and wait till the policy became payable by its terms, and then try the question of forfeiture in a proper action on the policy." *Day v. Connecticut G. L. Ins. Co.* 45 Conn. 480.

In the case at bar the beneficiary has elected to consider the policy at an end, and is here seeking to recover its value, as damages for the breach of the contract.

In a Virginia case a husband took out a policy of insurance on his own life for the benefit of his wife, and, in case she died before he did, then for her children, and paid the pre-

miums thereon up to the time of the war. After the war the company repudiated the policy. Then the wife died without bringing any suit, leaving only one child her surviving, and that child brought the action during the life of the assured, for damages for the breach of the contract. Pending that suit the insured died, and it was held, in effect, that after the company repudiated the policy the wife might have sued in her own name for damages for the breach of the contract, or she might have waited, and, if she survived her husband, she might have brought an action on the policy; that as she did not survive, but died prior to her husband, such right of action on her death at once became vested in the child; that the war did not abrogate the policy, but only suspended the same; and that the company's repudiation of the policy after the war excused the insured from making any tender of premiums thereafter. *Clemmitt v. New York L. Ins. Co.* 76 Va. 355; *S. C.* 77 Va. 366. It was there further held that:

"Where breach occurred and suit is brought during insured's life, and he dies before judgment, the value of the policy is the present value, as at the date of the insurance company's repudiation, of the sum assured and payable at the death of the assured, to be diminished, however, at the same date, by the present value of the premiums subsequently accrued, and also by the amount of the premiums previously accrued (which are unpaid), and interest thereon."

It was there strongly intimated that, even if the assured had been "alive at the date of the judgment, with no decrease of health except from efflux of time," still she might have recovered such damages as she had actually sustained. It was there said that "the rule to ascertain the value of a life policy is laid down in *Universal L. Ins. Co. v. Binford,* 76 Va. 103." In that case the company was insolvent, and it was held that the policy-holder was entitled to a sum of money which "would purchase from a solvent company a policy of the same kind, for the same amount, and for the same rate of premium," and that such amount was ascertainable "by treating

the difference between the premiums paid the defendant company and the premiums to be paid to the new insuring company as an annuity for the assured's expectation of life, and calculating its cash value." In the case at bar the company is solvent, and the assured is in poor health and is not insurable.

In Georgia it has been held that, where the company had breached the contract, the holder of the policy was entitled to "recover any damages he may have sustained in consequence thereof." *Alabama G. L. Ins. Co. v. Garmany,* 74 Ga. 51. It has been held in New York that, where the policy-holder is entitled to recover damages for the breach of the contract, the measure of his damages "is the value of the policy destroyed; and in ascertaining this resort may properly be had to tables used in the business of life insurance, showing the average expectancy of life." *People v. Security L. Ins. & A. Co.* 78 N. Y. 114, 125, 126. In a later case in New York it was held:

"That if, at the time of the refusal of the defendant to accept the premiums, the life of the plaintiff's father was still insurable, the measure of his damages was the difference between the then present value of the premiums he would have been compelled to pay during the life of his father under the policy issued by the defendant and the present value of the premiums which he would be compelled to pay under a policy which could then be obtained from another responsible company; that if at that time the life of his father was not insurable, his damages would be the actual value of the policy at the time of the breach, as being a valid and obligatory claim against an entirely responsible company." *Speer v. Phœnix M. L. Ins. Co.* 36 Hun, 322.

In that state it is held that in case of such breach of the company the policy-holder is entitled to recover as damages the value of the policy at the time of the breach. *Farley v. Union M. L. Ins. Co.* 41 Hun, 304; *People v. Empire M. L. Ins. Co.* 92 N. Y. 105. The latest case in that state which has come to our attention, and applicable here, is *Toplitz v.*

*Bauer,* 161 N. Y. 325, 336, 55 N. E. 1059, 1062, where it was said by the court and held that:

"The insurance company, having thus canceled its obligation, refused to reinstate it. The plaintiffs are entitled to complete indemnity for the loss thus sustained, and the inquiry was, What was the loss in contemplation of law ? . . . The reasonable and just rule of damages in such cases would seem to be the cost of replacing the policy on the same terms in a perfectly sound company at the time of the surrender, but the pledgor had then ceased to be an insurable risk under any circumstances existing in the business of insurance; so that the real loss was the face of the policy less what it would cost to carry it by payment of another premium which fell due before the death of the insured." See 2 May, Ins. (4th ed.) § 569.

These New York adjudications seem to indicate the true rule of damages in such cases. Under the allegations of the complaint, which are admitted by the demurrer, the plaintiff is entitled to recover unless she should die before the assured. So, as the case now stands, the complaint states a cause of action.

*By the Court.*—The order of the circuit court is reversed, and the cause is remanded with direction to overrule the demurrer, and for further proceedings according to law.

SIEBECKER and KERWIN, JJ., took no part.