MRS. ANNE COMBS, ADMINISTRATRIX OF A. L. COMBS, v. JEFFERSON STANDARD LIFE INSURANCE COMPANY.

(Filed 20 April, 1921.)

1. **Insurance, Life—Principal and Agent—Fraud—Premiums—Misrepresentations—Evidence.**

Evidence that the agent of the insurer, after urging the insured to pay his premium on his life insurance policy soon to become due, and not let it lapse, is informed by the insured that he doubted that he could keep the policy in force, as he had developed a case of tuberculosis, and thereupon the agent misrepresented to the insured that the policy had already lapsed upon his taking up a policy loan that had been made to him, and

the insurer would receive no more payments of premiums, which in ignorance the insured believed, and did not then resist on account of his physical condition and resulting depression, but afterwards brought suit for reinstating the policy, and he had always been able, ready, and willing to pay the premiums: *Held,* sufficient on the question of actionable fraud to sustain a verdict in favor of the beneficiaries of the policy obtained after the death of the insured.

**2. Insurance, Life—Principal and Agent—Fraud—Ratification.**

Where the insurer retains the rights or benefits of cancellation of a life insurance policy procured by the fraud of its agent, it may not retain the benefits thus received and repudiate it, for such would be a ratification thereof, whether expressly or impliedly authorized by it or not.

APPEAL by defendant from *Allen, J.,* and a jury, at September Term, 1920, of ALAMANCE.

Plaintiff sued on an insurance policy of $3,000, held in defendant company at the time of his death, claiming that the failure to pay the two last premiums thereon was caused by false and fraudulent representations of the defendant's agent having charge of the matter. Defendant denied liability; alleged that policy forfeited for failure to pay premiums due thereon; that if any representations were made by their agent it was after the absolute forfeiture of policies, and agent in question was without authority in the premises. The jury rendered the following verdict:

"1. Was the lapsing of the policy sued on procured by fraud and misrepresentation, as alleged in the complaint? Answer: 'Yes.'

"2. If said representations were made, were the same made prior to 1 January, 1918, that is, before that time? Answer: 'Yes.'"

Judgment for plaintiff for amount of policy, less unpaid premiums. Defendants excepted and appealed.

*J. J. Henderson, W. P. Bynum, R. C. Strudwick for plaintiff.*
*Brooks, Hines & Kelly for defendant.*

HOKE, J. There were facts in evidence on the part of plaintiff tending to show that in 1915 plaintiff's intestate had taken out a policy in defendant company for $3,000, at an annual premium of $106.32, payable 1 December of each year, and with an extension privilege of thirty days, the first premium becoming due in 1915. That the policy was pledged to the company as collateral for a loan of money, which had been paid off when due, the company still retaining possession of the policy. That the premiums for 1915 and 1916 were duly paid by intestate, and in 1917, the latter part of November or in December of said year, an agent of defendant company came to the home of the intestate, reminded him that his premium would soon be due, or was already due,

and urged the intestate not to allow the policy to lapse. That intestate, in the conversation, told the agent that he had developed a case of tuberculosis and there was doubt if he could keep up the policy, etc. Thereupon the agent immediately changed position and told the intestate that he had pledged the policy to the company as security and that the same had lapsed and become void on payment of said loan, and company would accept no more premiums on it. That the intestate was a farmer, ignorant of business of this kind, and especially of the business of life insurance. That the health of intestate had been failing for some months and was rapidly growing worse, and "his fatal malady was such as to seriously affect his nervous system, rendering him despondent, impairing his capacity for work or resisting importunity"; and under the conditions presented, believing representations of agent to be true, and that the policy was no longer in force, he failed to pay the premiums for 1917-1918. That intestate was at all times ready and willing to pay said premiums, and as soon as he ascertained that he had been imposed upon by the false and fraudulent representation of defendant's agent he instituted suit against the company for reinstatement, etc., but died in the early part of 1919, before the case could be brought to a trial.

There was evidence of defendant in denial of plaintiff's position and tending to show that any conversation with Mr. White, their agent, was in January, 1918, after the policy had become forfeited. That said agent was without power to bind the company by any waiver or stipulation other than contained in the contract. On the pertinent issues submitted, the jury have accepted plaintiff's version of the matter, and on the facts, as stated, we are of opinion that her cause of action has been properly established.

It is chiefly urged for error by appellant that the court, in part and on the principal issue, instructed the jury as follows:

"If the jury should find by the greater weight of the evidence that V. B. White, as agent of the defendant, procured the lapsing of the policy as alleged in the complaint, which I have mentioned to you, by fraud and false representations—I say, if the jury find, by the preponderance of the evidence, that White, as agent of the defendant, procured the lapsing of the policy by fraud and false representations, then the defendant company cannot retain the benefit of such conduct of White and be relieved from the consequence of such fraudulent means by which such lapsing was obtained, if you find that to be the fact."

There are facts in evidence on the part of plaintiff permitting the inference that the agent, V. B. White, was within the course and scope of his authority in his conversation with intestate about keeping up the policy, but assuming, as this instruction does, that the said agent acted beyond his powers in the premises, we think the charge is in

accord with the approved principles. In Tiffany on Agency, p. 46, it is said "That the relationship of principal and agent is created by ratification when one person adopts an act done by another person, assuming to act in his behalf, but without authority or in excess of authority, with the same force and effect as if the same had been created by appointment." The citation, as stated, is quoted as authoritative in *Trollinger v. Fleer,* 157 N. C., 81-87, and the principle has been approved and applied in numerous decisions in this and other courts dealing with the question. *Bank v. Justice,* 157 N. C., 373-375; *Osborne v. Durham,* 157 N. C., 263; *Sprunt v. May,* 156 N. C., 388; *Rudasill v. Falls,* 92 N. C., 222; *Reitman v. Florillo,* 76 N. J. L., 815; *Whiting v. Craudell,* 78 Nev., 593; *Clough v. Dawson,* 138 Pac., 233; *Heinlein v. Imp. Life Ins. Co.,* 101 Michigan, 250; *Tabor v. Michigan Mutual Life Ins. Co.,* 44 Mich., 324.

As a deduction from the primary position and more directly applicable to the facts presented, it is held in the *Reitman case, supra,* "That an innocent principal cannot assert any rights or retain any benefits upon a contract when it is procured by the fraud of his agent." And so here. The surrender of the policy having been procured by the false and fraudulent representations of V. B. White, an agent of the company, and professing to have authority in the matter, the company cannot retain the policy and repudiate the acts of the agent by which it was obtained.

There are modifications of the doctrine required, or, rather, a different rule prevails when one is seeking to hold an innocent principal in an action for deceit on the part of his agent, and there are other well recognized exceptions, *Kenneday v. McKay,* 43 N. J. L., 288; 2d Corpus Juris, 495, but we are clearly of opinion that the present case comes well within the wholesome principle laid down by his Honor, and that the judgment for plaintiff should be affirmed.

No error.